**Jacqueline W. DAVIS,
Plaintiff–Appellant,**

v.

**Margaret M. HECKLER,
Defendant–Appellee.**

No. 85–2867.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1988.

Decided Feb. 13, 1989.

Abraham Virdeh, Virdeh & Virdeh, Santa Rosa, Cal., for plaintiff-appellant.

Michael R. Power, U.S. Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.

Before FERGUSON and LEAVY, Circuit Judges, and WILSON,[1] District Judge.

WILSON, District Judge:

Jacqueline Davis appeals from the denial of disability insurance benefits contending that the Administrative Law Judge ("ALJ") improperly rejected the opinion of her treating physician. We agree and reverse. In the process we take the opportunity to clarify the legal standard for rejecting the opinion of a treating physician, as well as to explain the claimant's evidentiary burden in establishing a prima facie case of disability.

## FACTS AND PROCEEDINGS BELOW

Davis alleged disability commencing December 30, 1981 due to heart disease. On December 30, 1981, Davis sought medical treatment in response to swelling in her ankles and extreme shortness of breath. Dr. Paul Umino, a general practitioner and Davis's family physician, diagnosed her condition as congestive heart failure secondary to arteriosclerotic heart disease. A chest X-ray on January 3, 1982 revealed a moderately enlarged heart. The radiologist diagnosed her condition as "mild" congestive heart failure with no evidence of focal pulmonary disease. Dr. Umino placed claimant on medication, and, on a follow-up visit on January 9, 1982, reported marked improvement in her symptoms. A cardiogram taken at this follow-up session revealed sinus tachycardia (irregular heart beats) and ST–T wave changes consistent with "acute myocardial failure" and "severe" heart disease, but there was no indication of acute myocardial infarction.

Dr. Umino termed the prognosis "fair," but noted that due to her shortness of breath and congestive heart failure, she could not perform sustained work. He concluded, "Because of her shortness of breath, I consider her basically totally disabled because of this condition."

There is very little evidence of Davis's heart condition after January 9, 1982. The evidence consists of five treatment notes from Dr. Umino and the records of one visit to the Emergency Room at Petaluma Valley Hospital. The treatment notes are largely illegible, but variously indicate

---

1. Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

Davis denied shortness of breath and complained of tiredness and chest pains. The records from the Emergency Room provide further inconclusive medical evidence. Davis came to the Emergency Room on August 20, 1982, complaining of extreme shortness of breath and reporting chest pain with activity. An electrocardiogram revealed the following abnormalities: few atrial premature contractions; a brief run of atrial fibrillation with ventricular response of approximately 120 per minute vs. sinus tachycardia seen on the rhythm strip; and ST–T changes consistent with ischemia and/or Digitalis effect since 3/4/78. The chest X-rays, however, showed no obvious abnormalities. Claimant's heart rate was regular with no murmur noted. Her breathing was impaired by only a "few wheezes," and she presented no pedal edema. The diagnosis was acute alcohol intoxication.

At the administrative hearing on June 6, 1983, the ALJ stated: "There's very little, as I recall, very little medical at all ... There's not enough in there to show a severe impairment." Davis's counsel agreed stating that Exhibit 17 (Dr. Umino's conclusion that claimant was incapable of working) constitutes "an opinion, there's no medical support for it." Davis's counsel stated that this lack of medical support for his client's claim was the reason he had arranged for claimant to be examined by Dr. Blackard, a cardiologist in San Francisco, on August 4, 1983.

The ALJ agreed to leave the record open for sixty days after the hearing to allow claimant to obtain the consultative cardiological report of Dr. Blackard. On June 23, 1983, before the report was obtained, Davis suffered a disabling stroke. No report from Dr. Blackard was submitted.

At the direction of the Secretary, Davis was examined by Dr. Mohinder P.S. Ahluwalia on December 8, 1983. Davis informed the doctor that she had no history of chest pain, but experienced a cough, sputum production, asthmatic bronchitis and wheezing for the preceding twenty years. She had smoked two packs of cigarettes per day for forty years until her stroke in June 1983. Dr. Ahluwalia examined Davis, reviewed medical records and offered his impressions of right cerebrovascular accident with left hemiparesis, status post-congestive heart failure, compensated for by medication, chronic obstructive lung disease due to smoking, and asthmatic bronchitis. The doctor found that claimant could not use her left arm and could not walk without a walker due to weakness in her left leg. The doctor filled out a form indicating limitations that would prevent claimant from working.

On May 15, 1984, the ALJ held a supplemental hearing to take the testimony of a medical advisor, Dr. John J. Sampson, a Board Certified internist specializing in cardiovascular diseases. He testified that in his opinion, from reviewing the medical evidence, claimant has been disabled since her June 23, 1983 stroke, but he could not determine the severity of her heart condition before the stroke. Davis's counsel again asked for time to secure a consultative report from Dr. Blackard. The ALJ agreed to keep the record open for thirty days. No cardiological report was filed.

On July 27, 1984, the ALJ rendered his decision, granting benefits as of June 23, 1983 but denying benefits for the period December 31, 1981 to June 23, 1983.

Davis appealed the Secretary's decision to the district court which granted judgment in favor of the Secretary, holding that the ALJ's decision was supported by substantial evidence. Davis appeals to this court pursuant to 42 U.S.C. Section 405(g) (1982).

## STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment *de novo. Paulson v. Bowen,* 836 F.2d 1249, 1250 (9th Cir.1988).

In reviewing the ALJ's denial of disability benefits, a court will affirm if the findings are supported by substantial evidence and the Secretary applied the correct legal standards. *Sanchez v. Secretary of Health and Human Services,* 812 F.2d 509, 510 (9th Cir.1987). The same standard

applies where the ALJ has awarded benefits and the claimant seeks additional benefits, as in this case. *See Swanson v. Secretary of Health and Human Services,* 763 F.2d 1061, 1064 (9th Cir.1985). Substantial evidence means "more than a mere scintilla" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but "less than a preponderance." *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427. In determining whether there is substantial evidence to support the ALJ's decision, this Court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986).

## DISCUSSION

### I. *Burdens*

In order to qualify for Social Security disability benefits a claimant must establish that a medically determinable physical or mental impairment prevents him or her from engaging in substantial gainful activity. 42 U.S.C. Section 423(d)(1)(A) (1982). The impairment must result from abnormalities which are demonstrable by medically acceptable clinical or laboratory diagnostic techniques, Section 423(d)(3), and must be expected to result in death or last for a continuous period of at least 12 months. Section 423(d)(1)(A).

■ The claimant has the burden of proving disability within the meaning of the Social Security Act. *Martinez,* 807 F.2d at 773. The claimant establishes a prima facie case of disability by showing that her impairment prevents her from performing her previous occupation. *Id.* The burden then shifts to the Secretary to show

that the claimant can perform other types of work in the national economy, given her residual functional capacity,[2] age, education and work experience. *Id.*

At issue in this appeal is whether the ALJ properly disregarded Davis's treating physician's opinion that Davis was disabled as of December 30, 1981, and in the process correctly determined that Davis had not made out her prima facie case.

### II. *Treating Physician's Opinion*

■ Where an ALJ chooses to disregard the opinion of the treating physician, he must set forth clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor. *Fife v. Heckler,* 767 F.2d 1427, 1431 (9th Cir.1985); *Gallant v. Heckler,* 753 F.2d 1450, 1454 (9th Cir.1984); *Coats v. Heckler,* 733 F.2d 1338, 1340 (9th Cir.1984); *Montijo v. Secretary of Health and Human Services,* 729 F.2d 599, 601 (9th Cir.1984); *Delgado v. Heckler,* 722 F.2d 570, 574 (9th Cir.1983); *Rhodes v. Schweiker,* 660 F.2d 722, 723 (9th Cir.1981); *see also Albrecht v. Heckler,* 765 F.2d 914, 915 (9th Cir.1985); *Lombardo v. Schweiker,* 749 F.2d 565, 566 (9th Cir.1984). If the treating physician's opinion is contradicted by another doctor and the ALJ wishes to disregard the opinion of the treating physician, the ALJ must set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983); *see also Winans v. Bowen,* 820 F.2d 1519, 1523 (9th Cir.1987), *modified,* No. 83–3771, 853 F.2d 643 647 (9th Cir. August 4, 1988); *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987). The rationale for giving the treating physician's opinion greater weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Winans,* 820 F.2d at 1523.[3]

---

**2.** A claimant's residual functional capacity is what she can still do despite her physical or mental limitations. 20 C.F.R. § 404.1545(a) (1988).

**3.** We note that among the many disability decisions of this court, one can find authority re-

quiring an ALJ to set forth "specific, legitimate reasons" for disregarding the treating physician's opinion even when that opinion is uncontroverted. *See Brawner v. Secretary of Health and Human Services,* 839 F.2d 432, 433 (9th Cir.1988) (per curiam); *Summers v. Bowen,* 813

The record shows Davis's treating physician, Dr. Umino, concluded that Davis was disabled due to extreme shortness of breath associated with congestive heart failure. No other doctor contradicted this opinion. Neither the examining physician, Dr. Ahluwalia, nor the medical advisor, Dr. Sampson, offered a contradictory opinion.[4] Accordingly, the ALJ was required to set forth clear and convincing reason for rejecting Dr. Umino's opinion.

The ALJ disregarded Dr. Umino's opinion primarily based on the ALJ's determination that a disabling shortness of breath was not indicated by the objective medical evidence. He stated the following specific reasons for disregarding the opinion; the congestive heart failure first diagnosed on December 30, 1981 was "mild"; an electrocardiogram on the same date suggested a temporary sinus tachycardia; she showed marked improvement within six days; treatment notes indicated continued improvement; medication appeared to control her condition; during an emergency room visit in August 1982, while claimant complained of difficulty in breathing, she demonstrated only a "few wheezes," showed no signs of pedal edema (ankle swelling associated with congestive heart failure) and her electrocardiogram showed no acute abnormalities; a medical exam dated December 8, 1983 revealed she was not then in congestive heart failure. The ALJ additionally stated that claimant reported being able to cook, clean on a weekly basis, go shopping twice a week, drive, and go for short walks—activities which the ALJ deemed inconsistent with a severe disability.

The ALJ's rejection of Dr. Umino's opinion due to a lack of supporting objective medical evidence is inherently flawed. Dr. Umino's opinion rests on substantial medical evidence.[5] The diagnostic tests taken in December 1981 and January 1982 showed sinus tachycardia, ST-T wave changes, and an enlarged heart. Even in the opinion of the ALJ's medical advisor, these test results indicated "acute myocardial failure" and "severe" heart disease. And even though the objective evidence does not directly indicate a respiratory problem, the congestive heart failure demonstrated by the tests is a condition which could reasonably produce the reported symptom of shortness of breath. *See Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *see also Kellough v. Heckler*, 785 F.2d 1147, 1153 (4th Cir.1986).

Once we determine that the treating physician's opinion rests on substantial medical evidence, it would make no sense to allow the ALJ to reject the opinion of the treating physician because of insufficient findings. The ALJ would be substituting his

---

F.2d 241, 243 (9th Cir.1987) (per curiam); *Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir.1985). We additionally note the efforts of the court in *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) to draw a distinction between "ultimate conclusions" of treating physicians and other kinds of conclusions. The *Embrey* court apparently would require clear and convincing reasons to reject the treating physician's "ultimate conclusions" but only specific and legitimate reasons to reject other kinds of conclusions. We find this authority to be unpersuasive. All these cases ultimately rely on *Murray*, 722 F.2d at 502, as authority for the "specific, legitimate reasons" legal standard. But *Murray* addressed an ALJ's decision to reject a treating physician's opinion in favor of an examining physician's opinion. *Id.* at 501. Accordingly, *Murray* provides no support for the proposition that an ALJ need only set forth "specific, legitimate reasons" for disregarding an uncontroverted opinion. We also find unpersuasive the *Embrey* court's

attempt to harmonize the two legal standards on the grounds of "ultimate conclusions" and other conclusions. The better view is that the opinions of treating physicians—whether ultimate conclusions of disability or discrete medical findings—are entitled to special weight, and when uncontroverted, may only be rejected for clear and convincing reasons.

**4.** Dr. Ahluwalia concluded that Davis suffered from obstructive lung disease due to chronic smoking. In our view, Dr. Ahluwalia's conclusion does not contradict Dr. Umino's conclusion that Davis suffered from a disabling shortness of breath due to congestive heart failure. Dr. Ahluwalia did not expressly contradict Dr. Umino's opinion, and the presence of obstructive lung disease does not preclude respiratory problems associated with congestive heart failure.

**5.** Substantial evidence means more than a scintilla but less than a preponderance. *See Desrosiers*, 846 F.2d at 576.

**328**

opinion for that of the treating physician even though a reasonable doctor could find the claimant is disabled. Such a result cannot be reconciled with the requirement that the ALJ accept the treating physician's opinion in the absence of "clear and convincing reasons" to reject it. *See Gallant*, 753 F.2d at 1454. The only time the lack of positive findings can provide a proper basis for rejecting the treating physician's opinion is when substantial evidence does not otherwise support the opinion.

Stated another way, a claimant satisfies her initial burden of showing that she is unable to return to her former employment by offering her treating physician's uncontradicted opinion that she is disabled—unless the *contradictory* evidence is so *clear* and *convincing* that the treating physician's opinion may be disregarded.[6] The only contradictory evidence relied on by the ALJ is a treatment note indicating Davis denied shortness of breath, and Davis's testimony that she could engage in limited daily activities. This evidence is not sufficient to sustain the ALJ's rejection of Dr. Umino's opinion. Ambiguous treatment notes cannot provide clear and convincing evidence of non-disability. *See Kellough*, 785 F.2d at 1153. Nor does the ability to perform a limited daily routine establish the absence of disability. *See Talbot v. Heckler*, 814 F.2d 1456, 1462 (10th Cir. 1987).

We further reject the Secretary's attempt to justify the ALJ's decision under Rule 801 of the Federal Rules of Evidence, based on the admission of claimant's counsel that Dr. Umino's opinion was unsupported by objective medical evidence. Even if counsel's statement is admissible evidence, it is irrelevant. Whether substantial evidence supports the treating physician's opinion is a question for this court.

6. Although not essential to the disposition of this appeal, we offer the following formulation of the prima facie case for future guidance: A claimant satisfies her initial burden if (1) she offers subjective complaints of a disabling condition which are (2) corroborated by her treating physician and (3) the treating physician's opinion rests on substantial objective medical evidence, UNLESS (4) the treating

CONCLUSION

The decision whether to remand the case for additional evidence or simply to award benefits is within our discretion. *Sprague*, 812 F.2d at 1232. Under normal circumstances we would remand the case in order to allow the Secretary the opportunity to rebut the prima facie case. But in view of Davis's stroke-induced disability—and the difficulty of assessing her residual functional capacity between December 31, 1981 and June 23, 1983—we REVERSE and REMAND for payment of benefits.

physician's opinion is contradicted by another doctor, and the ALJ sets forth "specific, legitimate reasons based on substantial evidence" to credit the other doctor's opinion, or (5) where the treating physician's opinion is not contradicted by another doctor, the ALJ sets forth "clear and convincing reasons" (i.e., contradictory evidence) to reject the treating physician's opinion.