962 F.2d 13
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Lionel DUNN, Plaintiff-Appellant,
v.
Louis M. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-16506.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submission Deferred March 14, 1991.
Submitted April 15, 1992.
Decided April 23, 1992.
 
 1
 Before BEEZER and NOONAN, Circuit Judges, and SINGLETON, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Lionel Dunn appeals the district court's grant of summary judgment affirming the decision of the Secretary of Health and Human Services ("Secretary") to deny his application for Supplemental Security Income benefits under Title XVI of the Social Security Act, as amended. We vacate and remand to the district court, with instructions to remand to the Secretary for further proceedings.
 
 
 4
 Dunn claims (1) the Appeals Council erred in overlooking significant evidence of diminished capacity due to necessary medication; (2) the Appeals Council erred in weighing Dunn's testimony of disabling pain; (3) the Appeals Council erred in rejecting the opinion of a treating physician, Dr. Everest, without making sufficient findings in support of that rejection; and (4) there was not substantial evidence to support the finding that Dunn was not disabled prior to February 1, 1986. We address each of these claims in turn, for the guidance of the Secretary upon remand.
 
 FACTS
 
 5
 Lionel Dunn was born in 1927. He completed the eighth grade and later obtained a General Equivalency Degree. In 1945, he joined the Army and served our nation for twelve years. After leaving the armed services, Dunn ran a restaurant and bar, sold automobiles, and worked as a janitor. This most recent position as a janitor frequently required heavy lifting, bending down, and climbing. In 1975, while employed as a janitor, Dunn injured his back attempting to lift a heavy oil drum. He has not engaged in any substantial work since that time.
 
 
 6
 Dunn applied for Supplemental Security Income disability benefits on February 11, 1983. He was denied benefits in a final decision made on July 19, 1984. Dunn brought this action in district court pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3). Dunn persuaded the district court that the final decision of July 19, 1984 was erroneous; a remand to the Secretary for further proceedings was ordered on February 18, 1986.
 
 
 7
 On March 14, 1986, the Appeals Council, complying with the remand, ordered a hearing before an administrative law judge. Dunn had in the interim filed a second application for benefits. After initial and reconsideration denials, Dunn demanded a hearing on his second application. A consolidated hearing on both applications was held on July 10, 1986. Dunn testified at this hearing that he continued to have pain in his lower back and in his right leg, and had trouble moving and bending. He also suffered depression. He stated that he walked with a cane, sometimes employed a neck brace, and slept on the floor. He testified that he took pain medication to relieve these symptoms, but he suffered side-effects from the medication, including sleepiness and nausea.
 
 
 8
 There was medical evidence in the record to support Dunn's allegations of pain. In November 1977, Norman M. Harris, M.D. concluded that Dunn, though not completely disabled, did suffer from a permanent partial disability and was precluded from working at heavy janitorial work. Arthur M. Auerbach, M.D. treated Dunn for back pain from September 1978 to December 1981, and also concluded that Dunn could not perform the heavy janitorial work which he had in the past. He treated Dunn with a back support, physical therapy, a TNS stimulator, and painkillers including Darvocet and Clinoril.
 
 
 9
 In an opinion dated May 17, 1984, treating physician Russell Everest, M.D. stated that Dunn's pain was consistent with chronic nerve root irritation revealed by an electromyogram. This nerve root irritation had in Dr. Everest's opinion diminished Dunn's ability to stand or sit or walk, to bend or climb, or to lift and carry weight. On September 22, 1984, Dr. Everest stated that Dunn was unable to perform a full range of sedentary work. On February 15, 1985, he noted that Dunn had a continuing diagnosis of lumbar radiculopathy and the limitations imposed by that condition precluded him from performing even sedentary work for six more months. On November 20, 1985, he indicated that Dunn's condition continued unabated.
 
 
 10
 On remand, the administrative law judge ("ALJ") found that Dunn was not disabled, and issued a decision containing recommended conclusions on December 30, 1986. The Appeals Council rejected this conclusion, however.[1] In a final decision dated January 27, 1988, the Council found that Dunn was disabled after February 1, 1986, but was not disabled before that time. It is this decision which we review.
 
 STANDARD OF REVIEW
 
 11
 We effectively review the judgment of the Appeals Council,[2] since our review of the judgment of the district court is de novo. Gamer v. Secretary of Health & Human Servs., 815 F.2d 1275, 1278 (9th Cir.1987). The Secretary's decision to deny benefits will be disturbed only if it is not supported by substantial evidence or is based on legal error. Green v. Heckler, 803 F.2d 528, 529 (9th Cir.1986); see also 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted), but "less than a preponderance." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401, 91 S.Ct. at 1427 (internal quotation marks omitted). To determine whether the Secretary's decision is supported by substantial evidence, we " 'review the administrative record as a whole, weighing both the evidence which supports and [that which] detracts from the ALJ's conclusion.' " Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989) (quoting Davis v. Heckler, 868 F.2d 323, 326 (9th Cir.1989)).
 
 
 12
 The ALJ is responsible for determining credibility, including the resolution of conflicts in medical testimony. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984). The ALJ is also responsible for resolving ambiguities. Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir.1984). Where the evidence is susceptible to more than one rational interpretation, the Secretary's judgment must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.1984). The claimant bears the initial burden of showing a disabling physical or mental impairment. Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 511 (9th Cir1987).
 
 
 13
 Where, as here, the claimant is undoubtedly currently disabled and there is a dispute as to the onset date of that disability, the question before us is whether the onset date actually designated is supported by substantial evidence, not whether another date could reasonably have been chosen. See Swanson v. Secretary of Health & Human Servs., 763 F.2d 1061, 1065 (9th Cir.1985). In this, we recognize, as has the Secretary here, that an onset date is, "of necessity, somewhat arbitrary; that will always be the case where the statute requires line-drawing but where a claimant's condition was gradually worsening." See Brief of Secretary, at 16.
 
 
 14
 Employing this standard of review, we conclude that the Secretary erred in overlooking significant evidence of diminished capacity due to necessary medication; the Appeals Council erred in weighing Dunn's testimony of disabling pain; the Appeals Council erred in rejecting the opinion of a treating physician, Dr. Everest, without making sufficient findings in support of that rejection; and these legal errors have frustrated review to determine whether there was substantial evidence to support the finding that Dunn was not disabled prior to February 1, 1986.
 
 DISCUSSION
 
 15
 I. THE SECRETARY ERRED IN OVERLOOKING SIGNIFICANT EVIDENCE OF DIMINISHED CAPACITY DUE TO NECESSARY MEDICATION.
 
 
 16
 Dunn has argued that the Appeals Council improperly overlooked significant evidence of diminished residual functional capacity. Dunn testified that his medication[3] affected his ability to remain awake, which in turn impaired his ability to obtain gainful employment. It is true that evidence of diminished capacity due to necessary medication must be considered in determining whether a claimant is disabled. See Varney v. Secretary of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.1988). Dunn's testimony described side-effects which were occurring in July of 1986, at the time of the consolidated hearing. However, it appears from the ALJ's summary of the medical history that Dr. Everest prescribed Darvocet as early as February 1985, a year before the onset date which the Secretary has established. See C.R.T. at 189. On remand, if Dunn is able to show that he suffered similar side-effects earlier than February 1, 1986, the Secretary should consider such diminished capacity as evidence of disability.
 
 
 17
 II. THE APPEALS COUNCIL ERRED IN WEIGHING DUNN'S TESTIMONY OF DISABLING PAIN.
 
 
 18
 Dunn contends on appeal that the Secretary improperly discounted his testimony that he experienced pain of disabling proportions in his lower back and in his right leg. C.R.T. at 47-51, 217-225. He argues that his testimony required the Secretary to make a credibility finding, in accord with Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1399-1400 (9th Cir.1988). Dunn urges that any findings of incredibility must be clear and specific, and should address particular testimony. See Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).
 
 
 19
 We have recently addressed in greater detail the standard to which the Secretary must adhere in evaluating claimants' complaints of disabling pain. See Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991) (en banc ). The en banc Bunnell court held that the standard pronounced in Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986), was the proper construction of the relevant law. Bunnell, 947 F.2d at 348.
 
 
 20
 The Cotton standard requires the claimant to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the type of the alleged pain. Cotton, 799 F.2d at 1407. Once produced, there is no requirement that the medical findings support the severity of pain alleged. Id. Consequently, the ALJ may not discredit the claimant's allegations of the severity of pain solely because they are unsupported by objective medical evidence. Id. If the ALJ determines that the claimant's allegations of severity are not credible, he must make specific findings that support that conclusion. Id.; see also Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1400 (9th Cir.1988). The findings must be properly supported by the record and sufficiently specific to allow a reviewing court to conclude the ALJ did not " 'arbitrarily discredit a claimant's testimony regarding pain.' " Bunnell, 947 F.2d at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir.1991)).
 
 
 21
 If the ALJ determines that the claimant's pain testimony is not credible, the ALJ must make specific findings supporting this conclusion. Those findings must include:
 
 
 22
 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
 
 
 23
 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
 
 
 24
 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
 
 
 25
 4. Treatment, other than medication, for relief of pain;
 
 5. Functional restrictions; and
 
 26
 6. The claimant's daily activities.
 
 
 27
 Bunnell, 947 F.2d at 346 (quoting Social Security Ruling 88-13). The Bunnell court adopted these factors from a Social Security Ruling issued by the Secretary to clarify the Secretary's regulations and policy. Cf. Paulson v. Bowen, 836 F.2d 1249, 1252 n. 2 (9th Cir.1988). While Social Security Rulings are not published in the Federal Register, and do not have the force of law, Bunnell, 947 F.2d at 346 n. 3, the Bunnell court considered the factors contained in SSR 88-13 to be helpful to ALJs in making the credibility assessments necessarily prerequisite to a meaningful opportunity for appellate review. Bunnell, 947 F.2d at 346.
 
 
 28
 Because the Bunnell court returned to the Cotton standard and rejected the standard of the panel concurrence in Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir.1990) (Wright & Wallace, JJ., concurring), overruled by Bunnell, 947 F.2d at 342, the Secretary had no occasion to apply the proper standard to Dunn's claims of disabling pain.[4] The record before us is not so univocal that a remand is rendered unnecessary. Cf. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.1989); Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1399-1400 (9th Cir.1988); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1988); Sprague v. Bowen, 812 F.2d 1226 (9th Cir.1987). We therefore remand to the Secretary for further proceedings in which Dunn's claims of disabling pain are evaluated by the proper standard, that adopted by the en banc court in Bunnell.
 
 
 29
 III. THE APPEALS COUNCIL ERRED IN REJECTING THE OPINION OF A TREATING PHYSICIAN, DR. EVEREST, WITHOUT MAKING SUFFICIENT FINDINGS IN SUPPORT OF THAT REJECTION.
 
 
 30
 Dunn argues that the Appeals Council disregarded the opinion of Dr. Everest without providing an adequate statement of reasons. It appears to us that the Appeals Council did not credit Dr. Everest's opinion that Dunn suffered from disabling pain. The Appeals Council did not expressly adopt the ALJ's reasons for disregarding or discrediting Dr. Everest's testimony, and Dunn argues that this alone was reversible error, since the Appeals Council's decision is the only decision under review. The Council did state that it did "not adopt the inferences, findings or conclusions of the Administrative Law Judge on the ultimate issue of 'disability.' " We construe the Appeals Council's decision to incorporate the ALJ's findings, including the ALJ's reasons for crediting or discrediting different testimony if those reasons could fairly be said to depend on assessments of credibility. Thus, we will review the reasons for disregarding the testimony of Dr. Everest which were proffered by the ALJ.
 
 
 31
 The ALJ wrote with regard to the physician-patient relationship between Dr. Everest and Dunn:
 
 
 32
 The claimant began seeing Dr. Russell Everest at the East Oakland Health Center in November 1983 for complaints of chronic lower back pain. An x-ray of the lumbosacral spine on December 9, 1983, showed age-compatible findings. In January 1984 the claimant also complaint [sic] of the right leg "giving out." Examination in February 1984 showed no muscle wasting, no clonis or spasticity. Hip flexion was limited to 30 degrees bilaterally due to low back pain and he was unable to do heel toe walking due to low back pain. The diagnosis was chronic low back pain with radiculopathy. An EMG on April 18, 1984, showed evidence of some nerve root irritation at the S-1 level felt to be chronic in origin. In a report of September 22, 1984, Dr. Everest wrote:
 
 
 33
 He carries the diagnosis of chronic radiculopathy. His residual functional capacity is less than the full range of sedentary and he is no longer able to perform the duties of his past work as a janitor.
 
 
 34
 However, in this report he indicated the claimant could sit or stand for three hours or walk for one hour during an eight hour day; bend, squat or reach above his shoulder occasionally, lift or carry up to 10 pounds; and coordination ability was good except for the right foot which was apparently limited due to radiating pain. Dr. Everest also indicated the claimant could not work near moving machinery or at heights but there was no reason given for this limitation. A myelogram on October 10, 1984, failed primarily due to the claimant's lack of cooperation and a CT scan of the lumbosacral spine on October 12, 1984 was normal. Following a myelogram and CT scan on November 13, 1984, it was concluded:
 
 
 35
 The combined myelogram and subsequent CT exam indicate there is a minor degree of narrowing of the lumbar subarachnoid thecal L3 inferiorly, without any involvement of nerve roots and without any discernible cause for this narrowing. There is no true bony canal stenosis.
 
 
 36
 Dr. Everest's clinic note on February 15, 1985, states that the claimant had non-radiating low back pain, but on the Employability Statement he completed the same date he indicated the claimant was unable to perform even sedentary work due to his inability to stand or sit for long periods of time or bend or loft due to "lumbar radiculopathy." The claimant continued to be seen monthly for chronic intermittent low back pain and to request and receive prescriptions for Darvocet. Dr. Everest wrote on November 20, 1985, that physical examination failed to demonstrate muscle or sensory deficit but that the claimant continued to carry the diagnosis of radiculopathy. Following Dr. Everest's resignation, Dr. Arthur L. Johnson, whose specialty certification is in pediatrics, began seeing the claimant. On August 20, 1986 Dr. Johnson wrote the claimant was precluded from even sedentary work due to his chronic back pain. He wrote the claimant limps with the aid of a cane, suffers with intermittent pain which is credible, duration of symptoms is unpredictable, and treatment consisted of physical therapy and antispasmotics as needed.
 
 
 37
 C.R.T. at 188-189.
 
 
 38
 In assessing Dr. Everest's opinion, the ALJ wrote:
 
 
 39
 X-rays of the lumbosacral spine have consistently showed mild degenerative changes on one occasion termed "age compatible." EMGs, CT scans, and myelogram have been essentially negative other than Dr. Everest's interpretation of an April 1984 EMG as showing nerve root irritation. I also note, however, that this was felt to be chronic in nature, and that Dr. Everest's certified specialty is in internal medicine. Dr. Everest also indicates the claimant cannot work around moving machinery or at heights but no reason is given for this. The claimant's attorney argued that this was due to the claimant's right leg giving out. There is no evidence of a seizure disorder. Dr. Harris indicated in 1977 the claimant was not able to return to his work as a janitor, but stated objectively there was little evidence of disability. Dr. Auerbach, the long-time treating orthopedic surgeon, concluded the claimant could perform his past work as a janitor as long as he did not have to lift, push, or manipulate weights over 50 pounds. Dr. Dye's report was essentially negative and he made no comments on the claimant's functional capacity. Dr. Everest indicated in his report of September 1984 that the claimant was limited to less than sedentary work due to lumbar radiculopathy apparently supported by EMG findings in April 1984. However this was not consistent with the rest of his Functional Capacities Evaluation form. Dr. Johnson continued the opinion that claimant was limited to sedentary work but his reports contain no further objective signs and findings to support this conclusion. Even if I accept Dr. Everest's interpretation of the April 1984 EMG study as supporting the claimant's allegations of pain, the preponderance of the medical evidence fails to establish a sufficient basis for the claimant's subjective complaints of pain of disabling proportions.
 
 
 40
 C.R.T. at 160 (emphasis added).
 
 
 41
 Our previous decisions make clear that an opinion of a treating physician is entitled to special weight. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989); Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir.1989). The treating physician's opinion is given this deference because she has a better opportunity to know the true nature of the claimant's disability, and has developed a relationship of trust and confidence with her patient.[5] "[S]he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987) (quoted in Rodriguez v. Bowen, 876 F.2d at 761). The treating physician's opinion is not conclusive, however. If an opinion is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion," then it may be rejected by the ALJ. Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986)).
 
 
 42
 The degree of deference which must be extended to a treating physician's opinion depends on whether the opinion is contradicted by that of another treating or examining physician. The ALJ must provide clear and convincing reasons for the disregarding of an uncontradicted opinion. Magallanes, 881 F.2d at 751 (citing Rodriguez, 876 F.2d at 761-62). Less deference is extended to a controverted opinion, however. Such an opinion may be rejected in favor of another as an inherent aspect of the ALJ's duty to resolve conflicts in the testimony. The ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Magallanes, 881 F.2d at 751 (quoting Sprague v. Bowen, 812 F.2d at 1230); see also Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).[6] "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751 (quoting Cotton, 799 F.2d at 1408).
 
 
 43
 In this case, there was no contradicting medical testimony based on the data which Dr. Everest considered. The Secretary provided no witness to construe the April 1984 EMG any differently than had Dr. Everest. Indeed, Dr. DeBardlabon confirmed Dr. Everest's interpretation of the 1984 EMG. See Note 1, supra. For these reasons, the ALJ's rejection of Dr. Everest's interpretation of that EMG should have been supported by clear and convincing reasons. No such reasons appear on this record. On remand, the ALJ should be careful to accord the opinions of the treating physicians the proper amount of deference.
 
 
 44
 IV. OUR REVIEW TO DETERMINE WHETHER THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE FINDING THAT DUNN WAS NOT DISABLED PRIOR TO FEBRUARY 1, 1986 HAS BEEN FRUSTRATED BY THESE LEGAL ERRORS.
 
 
 45
 It is within our discretion to award benefits on appeal. Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985). However, we generally award benefits only where further proceedings would not serve any useful purpose, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir.1985), or where the record has not been fully developed, and there is not substantial evidence to support the Secretary's decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir.1986). Remand is appropriate "where additional administrative proceedings could remedy defects"; but where remand would only delay the receipt of benefits, judgment for the claimant is appropriate. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.1989) (awarding benefits on appeal) (quoting Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir.1985)).
 
 
 46
 Where there is no substantial evidence to support the Secretary's decision, and an ALJ fails to provide clear and convincing reasons for discounting the opinion of the claimant's treating physician, we can accept the physician's uncontroverted testimony as true and award benefits. See Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1988). Here, however, there might perhaps be substantial evidence to support the Secretary's decision, but our review is frustrated by the failure of the ALJ to provide legally sufficient reasons for disregarding Dunn's disabling pain testimony. This failure, in turn, is due to the elusive nature of the law and the temporary departure from the Cotton standard wrought by the panel concurrence in Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir.1990) (Wright & Wallace, JJ., concurring), overruled by Bunnell, 947 F.2d at 342. While the Ninth Circuit, like the Eleventh, awards benefits on appeal where there is no substantial evidence to support the decision of the Secretary and the ALJ fails to provide legally sufficient reasons for disregarding a claimant's testimony of disabling pain, see Varney v. Secretary of Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir.1988), we decline to implement that rule in this case in light of the unclear nature of the law at the time that the ALJ issued his decision. Instead, we remand to the district court, with instructions to remand to the Secretary for further proceedings consistent with this opinion.
 
 CONCLUSION
 
 47
 The district court's summary judgment is VACATED and REMANDED.
 
 
 
 *
 The Honorable James K. Singleton, Jr., United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The Appeals Council had before it evidence which was not available to the ALJ. Dr. Herman DeBardlabon, Jr. treated Dunn from February 1986 until at least May 11, 1987. Dr. DeBardlabon's report, dated May 11, 1987, was before the Council. Dr. DeBardlabon stated that his diagnosis of chronic pain and radiculopathy (or nerve root irritation) was based not only on Dunn's reports of his subjective experience but also on laboratory studies, an electromyogram in 1984, and an x-ray in 1983 which showed abnormalities in nerves and musculature. Dr. DeBardlabon stated that Dunn was "limited functionally to a sedentary or less position," and suffered limited ability to walk or stand, carry or lift, work at heights or near machinery, or use his right foot to operate foot controls, such as those in an automobile. Dr. DeBardlabon concluded that use of a cane was medically warranted and Dunn was no longer able to do heavy janitorial work
 
 
 [2]
 The Appeals Council's decision is the final decision and word of the Secretary regarding Dunn's claim. See Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985). It is thus the only decision under review
 
 
 [3]
 Dunn testified that he was taking Darvocet and Tylenol 3. See Court Remand Transcript ("C.R.T."), at 220
 
 
 [4]
 One panel of our court has noted with some consternation the elusive nature of the law in excess pain cases:
 The growth in the number of excess pain cases may be a self-perpetuating phenomenon. As we decide more cases involving pain, the law regarding pain acquires more and finer refinements. The time lag between an ALJ's decision in a particular case and the day that case comes before us is often two years or longer; ALJs are thus often making excess pain determinations according to law that has been superseded by the time the cases are judicially reviewed. By continually shifting the target at which we ask ALJs to aim, we no doubt make it harder for them to hit it. The likelihood that an excess pain claimant will win reversal on appeal because the ALJ applied the wrong law accordingly increases, causing a corresponding increase in the number of excess pain cases appealed. And so on.
 Fair v. Bowen, 885 F.2d 597, 602 n. 3 (9th Cir.1989) (Kozinski, J.).
 
 
 [5]
 This is a case where testimony of subjective experience of disabling pain is important to claimant's case, and likely figures prominently in plaintiff's interaction with his treating physician. In such cases, it is important to remember that the ALJ must give sufficient weight to the subjective aspects of a treating doctor's opinion. Rodriguez v. Bowen, 876 F.2d at 763 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988))
 Moreover, even though objective diagnoses and data are important parts of a physician's reports, "[n]either the [ALJ's] observation of the claimant nor his reliance on the inability of the physicians to support their findings with objective laboratory findings constitute[s] a clear and convincing reason for rejecting their conclusions." Montijo v. Secretary of Health & Human Services, 729 F.2d 599, 601 (9th Cir.1984). A blanket statement that a medical opinion is not supported by enough objective data "does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir.1989) (quoting Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988)).
 
 
 [6]
 This rule does not apply, however, where the non-treating physician's opinion rests on objective clinical findings that differ from the findings of the treating physician. Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985). "[T]o the extent that [the non-treating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence...." Miller, 770 F.2d at 849 (quoting Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984))