**Arthur RICE, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services \*, Defendant–Appellee.**

No. 88–4225.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 27, 1989.

Decided Aug. 28, 1990.

---

\* Louis W. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

Ralph Wilborn, Eugene, Or., for plaintiff-appellant.

Ben A. Porter, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

Before ALARCON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant, Arthur J. Rice, appeals the order of the district court which affirmed the Secretary of Health and Human Services' (Secretary) final decision that Rice was not entitled to a period of disability or to disability insurance benefits.

On February 1, 1985, Rice filed an application for Title II disability insurance benefits. This application was denied on February 22, 1985, and again denied after reconsideration on April 3, 1985.

After a hearing, on August 13, 1985, the Administrative Law Judge (ALJ) issued a decision denying Rice's disability claim on the ground that he could return to his past work as a probation counselor and was not under a disability. Rice requested review by the Appeals Council; the Appeals Council declined to grant review and the ALJ's decision became the final order of the Secretary.

Rice filed a complaint in federal district court seeking judicial review of the Secretary's final order. After Rice filed a brief

in support of his petition for review, the Secretary moved to remand for the purpose of obtaining additional records from Rice's treating physician, to update and clarify Rice's medical status, and to conduct another hearing to obtain vocational expert testimony. Rice did not object to the Secretary's motion, and the district court remanded the case back to the Secretary.

Pursuant to remand from the district court and the Appeals Council, the ALJ admitted new evidence and held an additional hearing on October 7, 1986. On July 17, 1987, the ALJ found that Rice could return to work as a retail clerk in a builder's lumber store and, therefore, Rice was not disabled. The Appeals Council rejected Rice's objections and adopted the ALJ's decision.

The district court reopened the case previously remanded to the Secretary, and after briefing, the district court affirmed the decision of the Secretary. Rice appeals.

## FACTUAL BACKGROUND

Rice submitted evidence to substantiate three medical impairments: nerve deafness in his right ear, loss of vision in his right eye, and fibrositis.

In early 1984, Rice sought medical advice for decreased vision in his right eye and pain in his shoulders and temples. Dr. Kho, treating physician, diagnosed a central scotoma and felt that Rice's other symptoms may be caused from polymyalgia rheumatica. Dr. Kho ordered various tests and instituted Prednisone therapy for Rice's condition. The laboratory tests and the bilateral temporal artery bypass were negative; Rice's symptoms persisted.

Dr. Kho referred Rice to Dr. Emori, a rheumatologist, in March of 1985 for evaluation of inflammatory disease. Dr. Emori noted Rice had no objective manifestations of inflammatory disease—no swelling, redness or inflammation in his joints. Rice complained of diffuse musculoskeletal pain, fatigue and weakness involving the upper and lower extremities as well as his trunk.

On June 17, 1985 Dr. Emori noted that Rice complained of diffuse soft tissue and joint discomfort. On physical examination, Dr. Emori noted that Rice had "3 to 4 plus characteristic fibrositis areas of soft tissue tenderness." Dr. Emori's physical examinations of Rice on August 19, 1985 and December 30, 1985, resulted in the same findings.

On February 24, 1986 Rice still complained of "significant discomfort with diffuse muscoskeletal pain as well as morning stiffness." On examination Dr. Kho found "point tenderness consistent with fibrositis" and Dr. Kho concluded that Rice "has had a partial response to medicine, but is still significantly disabled from his illness. Although I am reluctant to state that he is not physically able to work, it is apparent that he is not. [Rice should] not attempt going back to work. The nature of his illness is chronic enough so that he ought to be permanently and totally disabled."

In March of 1986, Dr. Emori noted that Rice has significant shortness of breath and chest pain after walking one block. Physical examination showed the absence of any objective findings except for trigger point tenderness (when certain areas of soft tissue are probed with the finger discomfort is indicated). Dr. Emori stated that he was unable to measure Rice's specific physical limitations other than with Rice's complaints of fatigue and discomfort. Dr. Emori questioned whether tension factors were contributing to the illness and planned to request a psychiatric evaluation if Rice's symptoms did not improve.

Two months later Rice's condition worsened. Rice complained of fatigue, more discomfort in his upper extremities which increased with use, and shortness of breath. Physical examination showed "moderate limitation of motion in all ranges [of] both shoulders" with persistent unchanged trigger point tenderness. Dr. Emori felt that Rice was not able to function and "[w]ould not be able to do previous or any significant gainful physical activity because of fibrositis and new significant shoulder/upper extremity limitations."

At the request of the Secretary, Dr. Gell, a rheumatologist, performed an examination on Rice on September 18, 1986, which

was negative for objective evidence of rheumatological disease. Dr. Gell noted the following: Rice "had tenderness over the small joints of his hands but no swelling. Some tenderness in between the joints was noted as well. Wrist motions were full. Both of the elbows were stiff with less than 5 degrees of full extension. Shoulder motions were resisted by [Rice] and [Rice] had about 45 degrees of external rotation and 80 degrees of internal rotation of the left shoulder.... He was diffusely tender along the trapezius ridge, parascapular muscles, posterior axillary folds, as well as the costochandral junctions.... [Rice] had moderate loss of lateral flexion in the neck and about 30 degrees of extension possible. Lateral bending in the spine was also mildly limited.... There was paralumbar muscle tenderness, trochanteric tenderness bilaterally and guarded hip rotation."

Dr. Gell also noted that Rice had weakness of the left wrist and hip. According to Dr. Gell, Rice "was able to get up from a low stool ten times in 18 seconds which is slightly slow."

Dr. Gell concluded that Rice has fibrositis but noted that "[m]ost patients are not totally disabled with this diagnosis, and in [Rice's] circumstances, his level of function is really quite poor." Dr. Gell recommended that a physical capacity assessment be done and that a psychiatric evaluation be done.

There is no record of a physical capacity assessment and the psychiatric examination, performed by Dr. Sasser, showed no "emotional or mental limitations to [Rice's] involvement in a work setting and [concluded that Rice] must be considered capable of working from a mental standpoint."

Physical examinations throughout the rest of 1986 and in early 1987 by Dr. Emori showed that Rice had "significant 3 plus trigger point tenderness [and] limitation of shoulder motion" with increasing breathing difficulties. Dr. Emori consistently concluded that Rice "is not functionally capable of work[ing]."

Rice testified that:

he attended two years of college and was a licensed cosmetologist. He worked as an animal control officer for seven years. This was heavy and stressful work. He also worked as a corrections officer and a probation counselor. He was a volunteer in a stress team for the terminally ill. He has back and leg pain as well as temporal headaches. His pain is constant and his vision has worsened. He could read for 1½ hours a day without a violent headache. Because of the side effects of his medications he is groggy and cannot operate machinery. Lifting causes pain and kneeling, bending and stooping cause pain. He could sit up to 1½ hours and stand for 45 minutes. Because of his loss of vision he develops headaches and double vision. He has had no success with Prednisone. During the day he picks up the house with rest breaks, prepares lunch and naps. He does not go anywhere alone because he is confused by distortions in sound and sight. He is worn out by walking to the mailbox or raking leaves in a small plot. [Rice]'s wife, Iris, testified that [Rice] moves around a lot and walks outside. He has muscles spasms at night. It is difficult to communicate with [Rice] because he cannot understand if several people speak at once. She does the driving.

The first ALJ concluded in his August 13, 1985 decision that Rice "has a severe impairment as defined in section 404.1521 in that myofascial pain significantly affects his abilities to perform the basic work activities of lifting and carrying."

The ALJ also found that Rice's "testimony as to pain [was] not fully credible and [did] not establish the existence of the disabling pain alleged in light of the objective medical evidence [sic]. [Rice]'s allegation of pain [was] not consistent with the medical signs and findings." Thus, Rice "[had] the residual functional capacity to perform his past work as a probation counselor. This is defined as a sedentary job." The ALJ did not find "substantial evidence in the record to show claimant's inability to stand and walk and sit the remainder of the time and lift no more than 10 pounds at a

time, as sedentary work is defined at subsection 404.1567."

The second ALJ noted that Rice "displayed some trigger-point tenderness, which means that when certain areas of soft tissue were probed with the finger, he indicated discomfort. This is consistent with fibrositis, an irritation of the soft tissues."

Nevertheless, the ALJ concluded that Rice "is still capable of good oral communications with customers, and he can see well enough to perform the duties of a retail clerk (20/20 monocular vision). He has no other significant proven medical impairments, in spite of all of the talk and all of the examinations. The fibrositis, does not represent a significant impairment and is not much more than a description of subjective symptoms." The ALJ concluded that Rice, "except for periods of less than 12 continuous months during material times, has been, capable of unlimited exertional levels of work activity, but is limited to jobs that do not require binocular hearing or binocular vision. [Rice] is not prevented from returning to work as a retail clerk in a builder's hardware-lumber store, a job he performed for seven years within the 15-year period prior to his alleged onset date, and for which he is well qualified."

## DISCUSSION

### I. *Standard of Review*

■ This court's scope of review is limited to whether substantial evidence supports the Secretary's decision. *Davis v. Heckler*, 868 F.2d 323, 325 (9th Cir.1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

### ■ II. *Burdens*

In order to qualify for Social Security disability benefits a claimant must establish that a medically determinable physical or mental impairment prevents him or her from engaging in substantial gainful activity. 42 U.S.C. Section 423(d)(1)(A) (1982). The impairment must result from abnormalities which are demonstra-

ble by medically acceptable clinical or laboratory diagnostic techniques, Section 423(d)(3), and must be expected to result in death or last for a continuous period of at least 12 months. Section 423(d)(1)(A).

The claimant has the burden of proving disability within the meaning of the Social Security Act. *Martinez [v. Heckler,]* 807 F.2d [771] at 773 [9th Cir.1986]. The claimant establishes a prima facie case of disability by showing that her impairment prevents her from performing her previous occupation. *Id.* The burden then shifts to the Secretary to show that the claimant can perform other types of work in the national economy, given her residual functional capacity, age, education and work experience. *Id. Davis*, 868 F.2d at 326.

### III. *Res Judicata*

The Secretary's motion to the district court for remand states, in part:

Defendant moves the Court for an order remanding this case for further administrative proceedings. 42 U.S.C. § 405(g). Upon reviewing the record, the Appeals Council has determined that more current medical and vocational evidence is necessary to accurately and fairly adjudicate the case. Upon remand, records would be obtained from plaintiff's treating physician updating and clarifying plaintiff's medical status. An additional hearing would be held before an Administrative Law Judge. A vocational expert would evaluate whether or not jobs exist which a claimant with plaintiff's impairments could perform.

Rice did not object and the district court ordered the case remanded for further proceedings. On remand from the district court, the Appeals Council vacated "its denial of the claimant's request for review and the decision of the Administrative Law Judge and remand[ed] this case to an Administrative Law Judge for further proceedings."

■ Rice contends that the ALJ improperly exceeded the scope of review on remand. Under the doctrine of res judicata Rice argues that the second ALJ (July 17,

1987) improperly countermanded the first ALJ's finding (August 13, 1985) that Rice's residual functional capacity precludes lifting and carrying. Rice contends it was improper for the second ALJ to find that Rice had unlimited residual capacity. Relying on *Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir.1987), Rice contends that a final decision of the Secretary is subject to res judicata.

In *Chrupcala*, the court held that "once the 60-day period during which the Appeals Council may itself decide to review a hearing decision has expired, [20 C.F.R.] § 404.969 serves to bar the Appeals Council from delving into issues *not appealed* by the claimant." *Chrupcala*, 829 F.2d at 1273 (emphasis added). In that case, the ALJ determined that the claimant was disabled from 1981 to October 3, 1982. The claimant requested the Appeals Council to review the ALJ's decision that his disability ceased on October 3, 1982; the Appeals Council denied this request and the appellant filed an action in district court contending that the ALJ's determination that his disability ceased on October 3, 1982, was not supported by substantial evidence. On April 2, 1984, the district court remanded to the Secretary; the Appeals Council vacated its previous denial of the claimant's request for review and vacated the ALJ's decision. After a subsequent hearing, the second ALJ determined that the claimant was not entitled to any period of disability. The Third Circuit held that the Secretary had not been empowered to undertake an expanded review on remand. When the contested issue is the date the disability ended, the Court held that the Secretary erred in expanding the review to reconsider whether or not Chrupcala was disabled; the 60-day time period within which the

Appeals Council could initiate review was applicable and had expired.

The *Chrupcala* decision is distinguishable from this case. Here, Rice has appealed the Secretary's final decision to deny his claim for a period of disability and disability benefits. Unlike the claimant in *Chrupcala*, Rice did not apply for review of a limited issue.

Moreover, "the decision of an ALJ is binding only if neither party requests a review of the decision." *Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir.1984) (per curiam). Since Rice appealed this decision to the Appeals Council, he "may not now claim that the decision of the first ALJ has res judicata effect." *Id.* We find that the ALJ did not exceed the scope of his authority upon remand when he reassessed Rice's residual functional capacity in his order of July 17, 1987.

IV. *Rejection of Medical Opinions*

Three physicians—two treating physicians and one advising physician—did not testify but their opinions in medical records that Rice was unable to work were submitted to the ALJ.[1] Rice contends that the ALJ improperly disregarded his treating physicians' opinions that he was unable to work. The ALJ clearly accepted the treating physicians' assessment that Rice suffers from fibrositis. The ALJ, however, rejected Dr. Emori's uncontroverted opinion that Rice was disabled as a result of his fibrositis.

■■■ A treating physician's opinion is afforded greater weight. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987). A "treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of

---

1. Dr. Kho reported in his progress report in January 1985, that "[a]t this point I do not think that Mr. Rice will be able to continue to work," and in February 1985, "[a]t this time, Mr. Rice is suffering from significant crippling disease [diagnosed then as polymalgia rheumatica] and he is presently unable to work." Dr. Emori noted that "[a]lthough I think that [Rice] physically is going to have trouble working, that he will have real trouble trying to get social security to provide this help for him." On February 24, 1986, Dr. Emori stated in his progress report

that "although I am reluctant to state that [Rice] is not physically able to work, it is apparent that he is not. I would say that as of today, I would suggest that [Rice] not attempt going back to work. The nature of his illness is probably going to be chronic enough so that he ought to be permanently and totally disabled." On July 21, 1986, Dr. Emori noted in his progress record that Rice "would not be able to do previous or any significant gainful physical activity because of fibrositis." Dr. Gell noted that Rice's "level of function is really quite poor."

disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ may disregard a treating physician's opinion whether or not the opinion is contradicted; and the ALJ need not accept a treating physician's opinion which is " 'brief and conclusory in form with little in the way of clinical findings to support its conclusion.' " *Id.* (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986)); *see also Davis*, 868 F.2d at 328 ("The only time the lack of positive findings can provide a proper basis for rejecting the treating physician's opinion is when substantial evidence does not otherwise support the opinion.") "Where an ALJ chooses to disregard the opinion of a treating physician, he must set forth clear and convincing reasons for doing so if the treating physician's opinion is not contradicted by another doctor." *Id.* at 326 (internal citations omitted).

■ The ALJ disregarded Dr. Emori's opinion primarily based on the ALJ's determination that the treating physicians for the most part based their conclusion that Rice is disabled on Rice's subjective complaints of excess pain rather than clinical findings. The ALJ noted that:

> [A]t no time did [Rice] have any swollen, inflamed or hot joints which the doctor could detect on physical examination. [Rice] persistently claimed diffuse muscoskeletal pain, fatigue and weakness.... There were no solid objective findings on any of these five examinations—just diffuse discomfort and complaints of triggerpoint tenderness.... None of the tests demonstrated any pathology.

Contrary to Rice's contention, the ALJ did not reject the treating physicians' opinion that Rice was disabled due to a lack of sufficient objective medical findings. The ALJ recognized that there are no objective tests which can conclusively confirm the diagnosis of fibrositis and, in this case, the ALJ did not disagree with the treating physicians' diagnosis. The ALJ did disagree, however, with the treating physicians' conclusion that Rice is totally disabled.

After a review of the record we agree that Rice's treating physicians' opinion that Rice was unable to work was based solely on Rice's subjective complaints of excess pain and limitations. Drs. Kho and Emori did not complete any type of assessment to evaluate whether or not Rice is able to perform work-related activities. Neither Dr. Kho or Dr. Emori made any specific physical findings or mechanical evaluations to support their conclusions that Rice is totally disabled. The only "medical assessment to do work-related activities" form was completed by Dr. Gell. The ALJ properly rejected the findings made by Dr. Gell in this form because Dr. Gell merely asked Rice the questions on the form and filled in the answers based upon Rice's responses.[2]

While Rice's subjective complaints may support the diagnosis of fibrositis, these complaints are not substantial evidence that Rice is totally disabled. There was no testimony and no medical opinion in the record to the effect that diagnosed fibrositis in and of itself is totally disabling. In fact, Dr. Gell opined that most patients with this diagnosis are not totally disabled.[3] The treating physicians' reports are brief and conclusory with no clinical findings to support their disability finding. Because the record does not support the treating physicians' finding of impairment, the Secretary correctly rejected these opinions as they do not rest on substantial evidence. *See Davis*, 868 F.2d at 327–28.

**V. Excess Pain**

We next turn to Rice's claim that he is unable to work because of chronic fatigue and pain throughout his body. Rice argues that the ALJ failed to accord proper weight

---

**2.** The ALJ also rejected the findings made by Dr. Gell for the following reason:

> Since [Dr. Gell] had stated that he found almost nothing on an objective basis, and the only diagnosis was fibrositis, based largely on tenderness, which would not normally explain this degree of symptoms, it is obvious that [Dr. Gell] had no other basis for completing the form, unless he simply wrote no im-

pairments. This would be awkward in view of [Dr. Gell's] partner's earlier reports and extensive treatment.

**3.** Dr. Gell stated that he did "not have a good explanation for [Rice's] musculoskeletal pain ... most patients are not totally disabled with this diagnosis."

to his subjective allegations of disabling pain because the ALJ applied a now-discredited theory that subjective allegations of pain must be fully corroborated by objective medical findings.

■ In *Bates v. Sullivan*, 894 F.2d 1059, 1071–72 (9th Cir.1990) (Wright, J. and Wallace, J., concurring),[4] we recently held that for cases in which an ALJ's determination is rendered after January 1, 1987, "an ALJ may disregard a claimant's subjective pain testimony unless it is accompanied by evidence of a medical condition that could [ ] reasonably be expected to produce that pain." *Id.* at 1072 (quotation omitted). We specifically rejected the position that an ALJ "may not discredit subjective pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Id.* at 1064. Because the ALJ's determination was rendered on July 17, 1987 we apply the *Bates* analysis.

In the present case the ALJ found that while the evidence showed that Rice had been "thoroughly evaluated by a number of physicians for different possible maladies over the last five years, including cardiac problems, neurological problems, orthopedic problems, rheumatological and other problems ... no serious pathology has been found to explain his many complaints, nor is there a psychiatric pathology." On this basis the ALJ rejected Rice's testimony concerning excess pain.

■ As the ALJ noted, the record evidence shows that "six years of medical examinations by some 21 physicians in a half dozen specialties, with many tests, have failed to establish any significant underlying pathology or cause for the claimant's multiple complaints." The record evidence also shows that the medical testimony regarding Rice's only medically diagnosed condition, fibrositis, does not explain or support Rice's alleged pain. Therefore, we find that the record does not contain "evidence of a medical condition that could [ ] reasonably be expected to produce [Rice's] pain" and conclude that the ALJ

properly disregarded Rice's subjective pain testimony. *See id.* at 1072.

## VI. *Consideration of Rice's Combined Impairments*

Finally, Rice contends that the ALJ failed to consider the disabling effect of his psychological limitation. This contention is without merit. A psychiatric examination was performed by Dr. Sasser on October 13, 1986, who concluded that "there do[es] not appear to be any emotional or mental limitations to [Rice's] involvement in a work setting and [Rice] must be considered capable of working from a mental standpoint." A "psychiatric review technique" form completed by Dr. Thompson, a psychiatric consultant to Disability Determination Services concluded that Rice has "no medically determinable mental impairment." There is no medical evidence in the record to indicate that Rice suffers from a psychological limitation.

■ The Secretary must consider the combined impact of a claimant's impairments. 42 U.S.C.A. § 423(d)(2)(C). Here, contrary to Rice's suggestion, the ALJ considered the combined effect of Rice's impairments including his limited hearing and monocular vision neither of which is disabling in itself.

## CONCLUSION

We affirm the district court's decision that the ALJ (1) did not exceed the scope of his authority upon remand when he reassessed Rice's residual functional capacity; (2) properly rejected Rice's treating physicians' opinions; (3) properly found Rice's testimony regarding excess pain not credible and that his rejection of Rice's excess pain claim was supported by substantial evidence in the record; and (4) properly considered Rice's combined impairments.

AFFIRMED.

---

4. The procedural posture of *Bates* is unusual. Although Judge Thompson authored the opinion, Judges Wright and Wallace concurred in the result and wrote separately as the majority regarding Bates' subjective pain testimony, declining to join in that section of Judge Thompson's opinion.