Maria RUIZ, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.

No. CV 96–7977 LGB (JG).

United States District Court, C.D. California.

Oct. 19, 1998.

Joel D. Leidner, Leidner & Leidner, Los Angeles, CA, for plaintiff.

Leon W. Weidman, John K. Rubiner, Asst. U.S. Atty., Office of U.S. Attorney, Civil Div., Los Angeles, CA, for defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (Social Security)

BAIRD, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has reviewed the complaint, the records and files herein, and the attached Report and Recommendation of Magistrate Judge. The Court concurs with the findings and conclusions of the Magistrate Judge. Accordingly,

**IT IS HEREBY ORDERED** that

(1) the Report and Recommendation of the Magistrate Judge be, and hereby is, approved and adopted; and

(2) judgment be entered reversing the decision of the Commissioner of the Social Security Administration and remanding the case for further proceedings.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall serve copies of the Order Adopting and Judgment by United States mail on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

### JUDGMENT

IT IS HEREBY ADJUDGED that the decision of the Commissioner of the Social Security Administration is reversed and the case is remanded for further proceedings.

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE
### (Social Security)

GROH, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Lourdes G. Baird, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

Plaintiff has filed a complaint under 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of the Social Security Administration (Commissioner), on remand from this court, denying disability and supplemental security income (SSI) benefits, and the parties have filed cross motions for summary judgment.[1] For the reasons stated below, it will be recommended that the case again be remanded for further proceedings.

### BACKGROUND

Plaintiff applied for disability insurance benefits on April 16, 1991, and for SSI benefits on April 19, 1991, claiming to be disabled because of the residual effects of a back injury that she sustained in September 1987. (Administrative Record, A.R.29–35.) Initially and upon reconsideration, plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge (ALJ), which was conducted on February 4, 1993. In a written decision dated May 19, 1993, the ALJ found that plaintiff retained the residual functional capacity for the full range of light work and could not perform the functional demands of her past work as she described them. Proceeding to step five of the evaluation process,[2] the ALJ found plaintiff "not disabled" by applying the "grids" (20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.16). (A.R.19–20.) After the Appeals

Council denied plaintiff's request for review (A.R.5–6), plaintiff sought judicial review by filing a complaint in district court.

In a Memorandum and Order filed May 10, 1995 (A.R.422–435) (the "remand order"), this court remanded the case to the Commissioner for the limited purpose of providing further findings with regard to his credibility assessment and analysis as to the propriety of using the grids to determine the presence or absence of disability. (*Id.* at 431–434 and n. 12.) On remand, the ALJ conducted a supplemental hearing in March 1996. (A.R. 388–401.) Plaintiff was represented by counsel and testified through a Spanish-language interpreter. A vocational expert also testified. (A.R.388.)

In a written decision issued on May 29, 1996, the ALJ again denied plaintiff's claims, concluding that plaintiff retained the capacity for light work and could perform her past relevant work as normally performed in the national economy. (A.R.376–77, 380.) He therefore found her not disabled at step 4 of the sequential evaluation. (A.R.380–381.) The Appeals council denied plaintiff's request for review of that decision, which stands as the final decision of the Commissioner in this case. (A.R.360–361.)

### RELEVANT RECORD EVIDENCE

Plaintiff was born on August 23, 1945, and attended school in Mexico through the sixth grade. She learned to read and write in Spanish, but testified that she does not understand English. (A.R.347.) She came to the United States in 1972 and held various jobs in this country, most recently as an assembler at a faucet company from 1976 until September 13, 1987. On that date, she slipped and fell at work, injuring her right foot and ankle, as well as her back. She has not been employed since that date.[3]

---

1. The original case, *Ruiz v. Shalala*, CV 93–6981(JG), was decided by the Magistrate Judge on consent of the parties.

2. The regulations prescribe a five-step, sequential procedure. 20 C.F.R. §§ 404.1520, 416.920. Briefly summarized, to determine disability:

   [t]he following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe'? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occu-

pation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

   *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984); see also *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir.1991).

3. One of the medical reports indicates that plaintiff finished working on the day she was injured

**1048**

The medical evidence submitted at the first hearing was summarized in this court's prior order of remand. (A.R.423–426.) Both parties have adopted that summary. (Pl.'s Mem. at 6; Def.'s Mem. at 1.) To the extent relevant to the issues here presented, that evidence will be summarized in the discussion section, below.

At the supplemental hearing, plaintiff submitted medical records from Martin Luther King Medical Center and Kaiser Permanente. Those records establish that plaintiff sought treatment on numerous occasions between August 1993 and November 1995 for a variety of reasons, including gastrointestinal complaints, repeated glucose testing and "borderline" diabetes, upper respiratory symptoms, gynecological problems, and complaints of back pain (for which were prescribed physical therapy, analgesic and anti-inflammatory medications, diet, and exercise). (A.R.441–504, 518–563.) Diagnostic studies of the lumbosacral spine (x-rays and MRIs) conducted in August 1993, March 1994, and October 1994 revealed "minimal diffuse disc bulge" and "slight narrowing" of the intervertebral disc space, without evidence of significant change from earlier studies. (A.R. 463, 501, 549; *see also* 148, 168, 268, 265.)

At the supplemental hearing, plaintiff testified that her level of activity had decreased since the first hearing due to her back condition. She testified that she was seeing Dr. Effat (at Kaiser Permanente) every month and that she was taking "pain relievers" for arthritis and back pain. (A.R.390–391.) The vocational expert testified that plaintiff's prior work fit the description of a "production assembler" in the *Dictionary of Occupational Titles* (*DOT*) and was classified therein as an unskilled, light job. (A.R.392.) The vocational expert also responded to hypothetical questions posed by the ALJ and by plaintiff's counsel.

### DISCUSSION

■ Under 42 U.S.C. § 405(g), the Secretary's decision is subject to review to determine whether: (1) the findings are supported by substantial evidence and (2) the Commissioner applied the proper legal standards. *Swanson v. Secretary of Health and Human Services,* 763 F.2d 1061, 1064 (9th Cir.1985). "Substantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

■ The claimant has the initial burden of proving that she is disabled within the meaning of the Social Security Act. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). The burden of proof on the issue of disability switches to the Commissioner only if step five of the sequential evaluation is reached. *Quang Van Han v. Bowen,* 882 F.2d 1453, 1456 (9th Cir.1989).

Plaintiff contends that the ALJ is in contempt of the remand order because he adopted his prior credibility finding and made "no new legally cognizable findings upon which to predicate a noncredibility determination." (Pl.'s Reply at 3.) She further contends that the ALJ impermissibly decided the case at step four of the sequential evaluation and that plaintiff should be found disabled at step five.

### 1. *Credibility Determination*

■ The remand order directed the ALJ to set forth his credibility findings in detail, together with an explanation of his reasoning and citations to the evidence on which his findings were based. Plaintiff contends that the ALJ failed to comply with that directive.

In his post-remand decision, the ALJ discussed plaintiff's "excess pain" complaints and determined that she suffered from a "moderate" level of pain (which the ALJ defined as pain that interferes with, but does not preclude, her ability to perform basic work activities). (A.R.379.) He concluded that plaintiff's "moderate" pain and physical limitations (severe cervical and lumbosacral strain with lumbar disc bulge) limited her to light work. (A.R.379, 380.)

Contrary to plaintiff's suggestion, the ALJ did not find plaintiff's excess pain complaints to be wholly—or even largely—incredible.

---

and returned to work for three more days thereafter. Her ankle was then put in a cast, and it appears that she has not worked since that time. (A.R.180.)

He determined that she suffered back impairments and resulting pain that prevented her from engaging in heavy- or medium-level work activities, such as the lifting she described in her former job, and acknowledged that she was likely to experience some continuing discomfort in a light-level job. He did not, however, credit her allegations that her pain rendered her unable to engage in substantial gainful activity. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989) (the goal of disability insurance and SSI is not to award benefits for nondisabling pain).

Plaintiff's heated rhetoric notwithstanding, the ALJ did articulate reasons for his evaluation of plaintiff's subjective complaints, with citations to the evidence. (A.R.379.)[4] He observed that plaintiff's "pattern of treatment, medications, and complaints to her doctors do not suggest that her pain is more than moderate in nature." (A.R.379.) More particularly, he remarked that she had not been prescribed narcotic pain medication, as would be expected if she suffered from intense, chronic pain. At the 1993 hearing, she reported taking only ibuprofen for pain for the previous five years. (A.R.289.) At the second hearing, she stated that she was taking several prescription drugs for back pain, headaches, and arthritis (Motrin, Salsalate, Carisoprodol, Naproxen, Methocarbamol, Butalbital). As a group, these drugs have analgesic, anti-inflammatory, and sedative properties, and are indicated for the relief of discomfort associated with arthritic conditions and for mild-to-moderate pain. *See Physician's Desk Reference* at 1523–24, 1542–43, 2458, 2968 (52nd ed.1998). With the exception of Salsalate, which was prescribed in January 1995, all of the drugs mentioned had been prescribed only two to six months before the 1996 supplemental hearing—nine years after the alleged onset of disability. (A.R.517.) The ALJ further remarked that, as late as July 1995, plaintiff's physician noted that her "DJD [degenerative joint disease] [was] relieved by Salsalate" and that she reported feeling "better." (A.R.379, 442, 456.)

Plaintiff's relatively limited and recent use of non-narcotic medications—and evidence that medication helped relieve her symptoms—are valid factors supporting the ALJ's excess pain evaluation. *See Matthews v. Shalala,* 10 F.3d 678, 679–680 (9th Cir. 1993) (permissible credibility factors include limited treatment, minimal use of medications, and plaintiff's statement to doctor that pain had decreased); *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir.1986) (a symptom that can reasonably be controlled by medication or treatment is not disabling). Plaintiff's physicians presumably did not prescribe more potent narcotic painkillers because her symptoms did not require them, further suggesting that her excess pain allegations were exaggerated. *Cf. Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir.1995) (per curiam) (ALJ may consider unexplained absence of treatment for excessive pain); *Flaten v. Secretary of Health and Human Services,* 44 F.3d 1453, 1464 (9th Cir.1995) (ALJ permitted to draw rational inferences from treatment history); *Fair,* 885 F.2d at 603 (inadequately explained failure to seek treatment may be sufficient to discredit allegation of disabling pain).

The ALJ also cited plaintiff's otherwise conservative treatment regimen as a factor undermining her complaints of extreme pain and debilitation. While plaintiff did complain of, and seek treatment for, chronic low back pain (as well as for a number of other problems), she did not report intense pain nor was she observed to be in acute distress. She was prescribed physical therapy and home exercises, which brought some improvement; she was also advised to diet and to apply heat to relieve pain.[5] (A.R.442, 447 449, 454, 461, 470, 477, 507.) Plaintiff was never hospitalized, nor did her doctors recommend surgery; indeed, one of plaintiff's physicians (whose name is illegible) advised "no neurosurgical intervention at this time [July 28, 1995]," suggesting that her condition was simply not severe enough to warrant

---

4. Notwithstanding the ALJ's proffered "excess pain" analysis, plaintiff insists that the ALJ made *no* effort whatsoever to comply with the remand order (*see, e.g.,* Pl.'s Reply at 5) and proceeds to excoriate the ALJ (and defendant) in a most intemperate manner. (*Id.* at 1, 8, and 9.)

5. It is unclear from the record whether, or to what extent, plaintiff complied with those recommendations.

such invasive treatment. (A.R.454.) *See Fair*, 885 F.2d at 604 (plaintiff's allegations of "'persistent and increasingly severe' pain and discomfort" belied by, *inter alia*, "minimal conservative treatment" and lack of hospitalization for evaluation or treatment of alleged symptoms). Finally, as the ALJ explained in both his recent and prior decisions (A.R.17–18, 378), no doctor expressly opined that plaintiff was incapable of performing work of any kind, and one consulting physician (Dr. Ross) affirmatively concluded that plaintiff had no exertional limitations. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.1995) (per curiam) (ALJ permissibly relied, *inter alia*, on examining physician's opinion that claimant could perform sedentary work to discredit excess pain allegation).

I conclude that the ALJ has complied with the remand order by supplementing his previous credibility assessment with specific reasons, based on substantial evidence, justifying his decision to discount—but not disregard—plaintiff's excess pain testimony. *See Fair*, 885 F.2d at 604 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.")

### 2. Step Four vs. Step Five

█ Plaintiff contends that the ALJ erred on remand by denying plaintiff's claim at step four, thereby reviewing—and redeciding—an issue that had previously been decided in plaintiff's favor and not appealed. That argument is well-taken.

6. It is therefore unnecessary to address plaintiff's further contention that the medical evidence does not support the ALJ's residual functional capacity assessment. Plaintiff had the opportunity to challenge the ALJ's evaluation of the medical evidence in the prior action and argued, unsuccessfully, that the ALJ had erred in rejecting certain medical opinions. (A.R.429–430.) That argument was found to lack merit, and the issue is beyond the scope of the remand order. Accordingly, it will not be reconsidered here.

7. In *Chrupcala*, the court held that, on remand from the district court, the Appeals Council (and the second ALJ) were barred "from delving into issues not appealed by the claimant" because the Appeals Council had not undertaken review within 60 days of the initial hearing decision, which then became binding except as to the issues raised by plaintiff in his action for judicial review. *Id.* at 1273. The court further observed that the notice afforded to the plaintiff that all

The remand order expressly stated that the case was being remanded to permit the ALJ to remedy the deficiencies in his decision by making complete credibility findings. (A.R.434.) The remand order did not authorize the Appeals Council or the ALJ to revisit the previous step-four determination that plaintiff could not perform her past relevant work.[6] Indeed, the order makes it very plain that the remand was for a limited purpose; that new evidence need not be solicited or accepted unless the ALJ deemed it helpful to his credibility analysis; and that the decision on remand should address the application of the grids in light of the reassessment of plaintiff's subjective complaints. (A.R.433–434.) Nor did the Appeals Council order vacating the prior decision and remanding the case "for further proceedings consistent with the order of the court" suggest that review beyond the scope of the court's order was permitted or contemplated. (A.R.436.) There was, accordingly, no basis for the ALJ to review issues that had been determined in plaintiff's favor. *See* 20 C.F.R. §§ 404.946(a); 404.967–404.973; 404.976–404.977, 404.983–404.984; *Chrupcala v. Heckler*, 829 F.2d 1269, 1273–74 (3rd Cir.1987) (on remand from district court, Secretary lacked authority to review issues other than those raised by claimant in the action giving rise to remand).[7]

### 3. Use of Grids at Step Five

█ The Commissioner has failed to determine whether or not the grids may properly be applied in this case, as the remand

issues in his case would be reviewed de novo, in the form of a statement by the ALJ to that effect at the start of the second hearing, was of "dubious adequacy." *Id.* at 1274 n. 5. For a review of other cases considering this issue, *see* Alan J. Skutt, Annotation, "Social Security: Authority of Appeals Council To Review Issues Not Raised By Claimant," 96 A.L.R. Fed. 66 (1990).

Regulations promulgated after *Chrupcala* appear to conflict with its holding to some extent, in that they authorize the ALJ, in a case remanded by a federal court, to examine "[a]ny issues relating to your claim ... whether or not they were raised in the administrative proceedings leading to the final decision in your case." 20 C.F.R. § 404.983. However, those regulations also provide that the ALJ is bound to follow the Appeals Council's order "and may not take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.983, 404.977. The court's remand order in the instant case is very specific and limited in

order specifically instructed him to do. (A.R. 434 and n. 12.) That omission provides some support for plaintiff's contention that, by deciding the case at step four, the Commissioner evaded the full effect of the remand order, and justifies a further remand for the required analysis and findings at step five. If, as it appears, the record is sufficiently well-developed with respect to plaintiff's functional capacity, age, education, literacy, and vocational background to permit a fully-developed determination of that issue, disposition of the claims should not be further delayed by reopening the record for additional evidence, except to the extent that expert vocational testimony may be required.

## CONCLUSION

For all of the above reasons, I conclude that plaintiff's motion for contempt should be denied. Because, however, the ALJ erred in deciding the case at step 4 rather than at step five of the sequential evaluation, it is once again necessary to remand the case for

scope, and the Appeals Council remand order cannot reasonably be construed to authorize a review beyond that comprehended by the court's order.

The scope of the court's remand also distinguishes the instant case from *Rice v. Sullivan*, 912 F.2d 1076, 1080–1081 (9th Cir.1990), *overruled on other grounds, Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.1991). In *Rice*, the plaintiff sought judicial review of the Secretary's denial of benefits, and the Secretary moved for remand on the ground that updated medical evidence and expert testimony was needed to "accurately and fairly adjudicate the case." *Id.* at 1080. Rice did not object, and the district court remanded for further proceedings. On remand, the Appeals Council vacated its prior denial of the plaintiff's request for review and the prior decision and remanded the case to an ALJ, who conducted a further hearing, received new evidence, and entered a new decision. The plaintiff argued that *res judicata* barred the second ALJ from redetermining his functional capacity. *Id.* at 1080–1081.

The Court of Appeals held that the decision of the first ALJ was not entitled to *res judicata* effect and that the second ALJ did not exceed the scope of his authority on remand. *Id.* at 1081. In *Rice*, however, the remand order clearly (and without objection by plaintiff) contemplated the taking of new evidence and a *de novo* adjudication on the merits. That is so here. It appears, moreover, that the *Rice* court's reliance on *Lombardo v. Schweiker*, 749 F.2d 565 (9th Cir.1984), may have been misplaced, in that *Lombardo* involved a case in which the Appeals Council

the appropriate findings at step 5. As this further remand is made necessary by the Commissioner's error, it is appropriate to require that the Commissioner reach his final decision within 90 days of the entry of the order adopting this Report ·and Recommendation.

## RECOMMENDATION

**IT IS RESPECTFULLY RECOMMENDED** that the Court issue an Order:

(1) approving and adopting this Report and Recommendation; and

 (2) directing that judgment be entered remanding [8] this case for further proceedings consistent with this decision.[9]

DATED this 18th day of September, 1998.

granted the claimant's request for review of the ALJ's decision at the administrative level, meaning that the ALJ's decision never became final. *Id.* at 567; *see also* 20 C.F.R. § 404.955(a). In this case, the Appeals Council declined to review the original decision (including the step–4 evaluation), giving it binding effect, except to the extent plaintiff was entitled to (and did) seek further review in this court.

8. This remand is pursuant to the fourth sentence of 42 U.S.C. § 405(g). See 28 U.S.C. § 2412(d) and *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

9. Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to file objections with the above-named District Judge within 10 days (20 days, if in custody), as provided in Rule 3.1.04 and .05 of the Local Rules Governing Duties of Magistrate Judges and Fed.R.Civ.P. 72. The failure of either party to object to a particular finding of fact or conclusion of law may constitute a waiver of the right to contest the matter of appeal. *Smith v. Frank*, 923 F.2d 139, 141 (9th Cir.1991); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir.1991). A notice of appeal pursuant to the Federal Rules of Appellate Procedure should not be filed until judgment has been entered. Please note that the rules do not contemplate the filing of declarations, documents or other new factual material in support of objections, and the District Judge may decline to consider any such new matter.