**Lauren G. VANDER MOLEN,**
**Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant.**

No. 4:08–cv–00085–JEG.

United States District Court,
S.D. Iowa,
Central Division.

April 8, 2009.

Timothy N. Tripp, Tripp, P.C., Pella, IA, for Plaintiff.

Christopher D. Hagen, U.S. Attorney's Office, Des Moines, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, District Judge.

Plaintiff Lauren G. Vander Molen (Vander Molen) seeks review of the Social Security Commissioner's (the Commissioner) decision denying his application for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401–434. This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## I. PROCEDURAL AND FACTUAL BACKGROUND

Vander Molen was fifty-one years old at the time of his alleged disability onset date of September 26, 2000. Vander Molen obtained a twelfth-grade education and has past relevant work experience as a slitter machine operator helper, coating machine operator, and farmer.

On January 8, 2001, Vander Molen protectively filed applications for disability insurance benefits, alleging a September 26, 2000, disability onset date due to asthma and Churg–Strauss syndrome.[1] The applications were denied initially and upon reconsideration. Vander Molen requested an administrative hearing, which was held on May 23, 2002. On November 27, 2002, the administrative law judge (ALJ) issued a decision finding Vander Molen was not disabled within the meaning of the Act. After the Social Security Appeals Council (Appeals Council) denied Vander Molen's request for review, Vander Molen filed a complaint in this Court seeking review of the Commissioner's decision. On May 20, 2004, the Honorable Robert W. Pratt, Chief District Judge, remanded the Commissioner's decision for further proceedings (2004 Remand Order). *Vander Molen v. Barnhart*, No. 4:03–cv–90338 (S.D.Iowa May 20, 2004). On April 8, 2005, the Appeals Council vacated the ALJ's November 27, 2002, decision and remanded the case to the ALJ. The ALJ held a second administrative hearing on December 1, 2005, wherein Vander Molen sought disability insurance benefits for the closed period of September 26, 2000,

---

**1.** Churg–Strauss Syndrome is "asthma, fever, eosinophilic, and varied symptoms and signs of vasculitis, primarily affecting small arter-

ies, with vascular and extra vascular granulomas." Stedman's Medical Dictionary 1750 (27th ed. 2000).

through December 31, 2003. On July 28, 2006, the ALJ issued a second decision finding Vander Molen was not disabled within the meaning of the Act. On January 2, 2008, the Appeals Council denied Vander Molen's request for review. On March 4, 2008, Vander Molen commenced this action, again seeking review of the Commissioner's decision denying benefits.

## II. FINDINGS OF THE COMMISSIONER

Testifying at the administrative hearing on December 1, 2005, were Vander Molen and vocational expert Vanessa May (May or VE). The ALJ issued a written decision on July 28, 2006, which made the following findings:

1. [Vander Molen] met the disability insured status requirements of the Act on September 26, 2000, the alleged disability onset date, and will continue to meet them at least through the date of this decision.

2. [Vander Molen] received short term and long term disability pay until 2003. He began a real estate business in April 2003. Earnings in 2003 were $12,320.00; earnings in 2004 were $16,303.00. [Vander Molen] performed work at substantial gainful activity levels following April 2003.

3. The medical evidence establishes that [Vander Molen] has the following impairments which in combination are severe: Churg–Strauss vasculitis, asthma, sinusitis, hypertension and a later diagnosis of coronary artery disease (CAD) status post percutaneous coronary angioplasty (PTCA). However, [Vander Molen] does not [have] an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

4. The allegations and hearing testimony regarding the intensity and severity of symptoms are not fully credible for the reasons outlined in the body of this decision. This case has been carefully considered in accordance with 20 CFR 404.1529, as amended, SSR 96–7p (effective July 1996) and the standards agreed upon in the settlement reached in the case of *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984).

5. [Vander Molen] retains the ability to perform the exertional and non-exertional requirements of work, with the following limitations: he cannot lift more than 20 pounds, can lift ten pounds, stand for 30 to 60 minutes at a time and walk two to three blocks, with standing/walking at least two hours in an eight hour day, sit 30 to 60 minutes at a time and for at least 6 hours out of an 8 hour day. He can occasionally bend, kneel, crawl, climb, and squat. He should have no excessive exposure to heat, cold, humidity, and no more than minimal exposure to dust, fumes, smoke or chemicals. He should not work at heights. (20 CFR 404.1545.)

6. [Vander Molen] is unable to perform past relevant work.

7. [Vander Molen] was 51 years old at the alleged onset date of disability, which is defined as closely approaching advanced age under the Act (20 CFR 404.1563).

8. [Vander Molen] has a 12th grade education (20 CFR 404.1564).

9. [Vander Molen] has acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR 404.1568).

10. When considering [Vander Molen's] age, education, previous work experience, and residual functional capacity, jobs still exist in significant numbers in the national economy that could be performed. Examples of such jobs are: commission agent, advertising clerk, auction clerk, charge account identification clerk, distributing clerk, order clerk and office helper.

11. [Vander Molen] was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(a)(4)(v)).

Tr. 411–12.

## III. STANDARD OF REVIEW

■ This Court's role in reviewing the ALJ's decision is limited

to determining whether the ALJ's findings were supported by substantial evidence. Substantial evidence exists if, on the record as a whole ... there is evidence which a reasonable mind would find adequate to support the ALJ's findings. It the ALJ's task to resolve conflicts in the evidence and issues of credibility. Ultimately, this Court will disturb the ALJ's decision only if it falls outside the available zone of choice. A decision is not outside that zone of choice simply because we may have reached a different conclusion had we been the fact finder in the first instance.

*Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006) (internal citations and quotations omitted). After reviewing the ALJ's decision, if the Court finds "it possible to draw two inconsistent positions from the evidence and one of those positions repre-

sents the Commissioner's findings, [the court] must affirm the denial of benefits." *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir.2009) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir.1996)).

Applying these standards, the Court reviews the record in this case.

## IV. DISCUSSION

### A. ALJ's Compliance with the Remand Order

Vander Molen argues that the ALJ erred because he did not follow the 2004 Remand Order. Therein Chief Judge Pratt found the ALJ's November 27, 2002, decision made inconsistent findings that Vander Molen was limited to unskilled sedentary work (finding No. 5) but possessed the transferable skills to perform the semiskilled job of data entry worker (finding No. 9). Pursuant to sentence four of 42 U.S.C. § 405(g),[2] Chief Judge Pratt remanded the case to the Commissioner, specifically holding as follows:

On remand, the ALJ shall resolve the conflict between his finding No. 5 and finding No. 9. At the same time, [Vander Molen] should present evidence in the form of an evaluation by a qualified vocational expert which addresses the question of whether or not he possesses skills which would transfer to competitive employment.... The final decision of the Commissioner is hereby reversed and remanded for further proceedings consistent with this decision.

*Vander Molen v. Barnhart*, No. 4:03–cv–90338, slip op. at 4. On April 8, 2005, the Appeals Council vacated the final decision of the Commissioner and remanded the

---

**2.** Sentence four states, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

case to the ALJ for further proceedings consistent with the 2004 Remand Order.

The ALJ followed the 2004 Remand Order by obtaining the VE's testimony and determining based on his prior employment as a machine operator Vander Molen did not possess the transferable keyboarding skill to perform the semi-skilled job of data entry worker. On remand, the ALJ resolved the inconsistency in the prior findings of his first decision relating to Vander Molen's keyboarding skill. The parties now dispute whether the 2004 Remand Order constrained the ALJ's jurisdiction to the resolution of the inconsistency noted or whether the 2004 Remand Order permitted the ALJ to issue a decision containing new findings on issues not covered in the 2004 Remand Order. Namely, the ALJ's first residual functional capacity (RFC) finding differed from his RFC findings following remand. At the first administrative hearing, the ALJ determined Vander Molen's RFC as follows:

> The claimant retains the ability to perform unskilled work at an exertional level less than, but not significantly less than sedentary in that he is able to lift and/or carry 10 pounds occasionally and a nominal amount frequently, stand for 30 to 60 minutes at a time and walk for 2 to 3 blocks at a time. He can sit for 30 minutes at a time for up to 6 out of 8 hours. The claimant should avoid more than minimal exposure to smoke, dust, chemicals, irritants and extreme hot, cold, or humid temperatures. He should not work at unprotected heights. He cannot repetitively stoop, squat, kneel, crawl or climb.[3]

Tr. 22. On remand, at the second administrative hearing, the ALJ determined Vander Molen's RFC as follows:

> The claimant retains the residual functional capacity to perform the exertional and nonexertional requirements of work, with the following limitations: he cannot lift more than 20 pounds, can lift ten pounds, stand for 30 to 60 minutes at a time and walk two to three blocks, with standing/walking at least two hours in an eight hour day, sit 30 to 60 minutes at a time and for at least 6 hours out of an 8 hour day. He can occasionally bend, kneel, crawl, climb and squat. He should have no excessive exposure to heat, cold, humidity and no more than minimal exposure to dust, fumes, smoke or chemicals. He should not work at heights.[4]

Tr. 412. In this review, Vander Molen argues the ALJ exceeded his authority because the "law-of-the-case" doctrine prevented the ALJ on remand from redetermining Vander Molen's RFC.

---

**3.** The regulations define sedentary work as

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

**4.** The regulations define light work as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

■ "The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings. . . ." *Brachtel v. Apfel,* 132 F.3d 417, 419 (8th Cir.1997) (quoting *United States v. Bartsh,* 69 F.3d 864, 866 (8th Cir.1995)). The law-of-the-case doctrine's rationale is "to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *See* 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 637–38 (2d ed. 2002). The law-of-the-case doctrine applies to administrative agencies on remand. *Brachtel,* 132 F.3d at 419. Accordingly, the ALJ is bound by factual findings made by the district court on the initial review. *Id.* at 420.

The Court concludes the 2004 Remand Order narrowly defined the ALJ's jurisdiction to resolve the inconsistencies between findings Nos. 5 and 9. By its own language, the 2004 Remand Order states there is one dispositive issue that the ALJ must resolve: "Although the Court has read the entire record, a detailed recitation of the medical evidence in [sic] unnecessary for a proper understanding of the issue upon which this case turns, i.e. whether or not [Vander Molen] retains skills which can be used in work other than his past relevant work. In this regard, the ALJ made inconsistent findings." *Vander Molen,* No. 4:03–cv–90338, slip op. at 3. The 2004 Remand Order noted that if the ALJ determines that substantial evidence supports the conclusion that Vander Molen is limited to unskilled sedentary work, then Vander Molen "is entitled to an award of benefits based on Rule 201.14 of the Medical Vocational Guidelines." *Id.* However, if Vander Molen retains the transferable keyboarding skill to perform the semi-skilled job of data entry job operator based on his prior employment as a slitter machine operator helper, then Vander

Molen "retains skills which can be used in work activity which would disqualify him from benefits." *Id.* at 3–4. The stated reason for the 2004 Remand Order was that "[b]ased on the evidence in this record, the Court is unable to say with certainty which finding is correct." *Id.* at 4. However, the 2004 Remand Order expressly found that "[t]he one thing upon which the parties agree is that [Vander Molen] is limited to sedentary exertional work. This is supported by two letters from treating physicians. . . ." *Id.* at 4. Accordingly, the 2004 Remand Order ordered "[o]n remand, the ALJ shall resolve the conflict between his finding No. 5 and finding No. 9."

■ It is pivotal that the 2004 Remand Order does not question the ALJ's finding No. 5 that Vander Molen was limited to sedentary exertional work. The 2004 Remand Order instead focused on whether Vander Molen had transferable work skills related to computer keyboarding, which was finding No. 9. The 2004 Remand Order noted Vander Molen's argument that "keyboarding was only an incidental part of his job as a machine operator," but "based on information available at the time of the hearing, the vocational expert opined otherwise." *Id.* However, the 2004 Remand Order was skeptical of finding No. 9 because "the job description submitted after the hearing, and the letter from Joseph A. Quinn to Kimberly L. Meyer, would tend to detract from the finding that [Vander Molen] retains transferable skills. These two pieces of evidence, however, are not enough for the Court to rule that an award of benefits is the appropriate remedy." *Id.* Accordingly, the second part of the 2004 Remand Order directed that Vander Molen "should present evidence in the form of an evaluation by a qualified vocational expert which addresses the question of whether or not [Vander

Molen] possesses skills which would transfer to competitive employment." *Id.* While the 2004 Remand Order could have expressly limited the issues that the Commissioner could consider on remand, or conversely expressly allowed broader reconsideration, such specific directional language is not required if this Court can discern the scope from the totality of the Remand Order. Performing that analysis, this Court concludes the 2004 Remand Order was for a limited and specific purpose that precluded the ALJ from making new findings beyond the scope of the 2004 Remand Order's mandates. *See Sullivan v. Hudson*, 490 U.S. 877, 885, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989) ("[T]he district court's remand order will often include detailed instructions concerning the scope of the remand.... Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); *Ruiz v. Apfel*, 24 F.Supp.2d 1045, 1050 n. 7 (C.D.Cal.1998) (holding that the remand order made "it very plain that the remand was for a limited purpose; that new evidence need not be solicited or accepted unless the ALJ deemed it helpful to his credibility analysis").

The 2004 Remand Order's first mandate was that the ALJ must resolve the contradictions between findings Nos. 5 and 9. The ALJ's second decision resolved this contradiction by concluding that Vander Molen was capable of light exertional work. The ALJ's second decision contradicts the 2004 Remand Order's factual finding that Vander Molen was only capable of work at the sedentary exertional level. As such, because the 2004 Remand Order actually found that Vander Molen's RFC was at the sedentary exertional level, the ALJ was bound by that finding. *Brachtel*, 132 F.3d at 419–20 ("[I]f the District Court actually found that [the claimant] needed to lie down, the ALJ would be bound by that finding."). By operation of

law, the ALJ's second decision finding Vander Molen's RFC is at the light exertional level is barred by the law-of-the-case doctrine, and the ALJ was required to find that Vander Molen's RFC was at the sedentary exertional level. *See Ozbun v. Callahan*, 968 F.Supp. 478, 480 (S.D.Iowa 1997) (holding that the ALJ was bound by law-of-the-case doctrine with respect to determination that the claimant was severely disabled, and remand was for the sole purpose of determining whether there was a significant number of sedentary jobs in the national economy that the claimant was capable of performing); *see also Angevine v. Sullivan*, 881 F.2d 519, 521–22 (7th Cir.1989) (holding that the Appeals Council exceeded the narrow scope of the district court's remand by improperly recharacterizing the claimant's RFC as capable of performing light work rather than sedentary work, as originally determined by an ALJ, because "issues previously decided, either explicitly or by necessary implication, become the law of the case and such determinations are to be applied absent unusual or compelling reasons").

■ The 2004 Remand Order's second mandate was that Vander Molen present evidence to the VE about Vander Molen's possible transferable skills obtained from his prior relevant work experience. The ALJ's second decision concluded that Vander Molen did not have transferable computer keyboarding skills. However, the ALJ's second decision concluded that Vander Molen had transferable vocational skills from his farming experience and was capable of performing several sedentary semi-skilled jobs based on his prior farming work experience. *See* Dep't of Labor, Dictionary of Occupational Titles 260.357–010 (Commission Agent, Agricultural Produce), 247.387–010 (Advertising Clerk), 294.567–010 (Auction Clerk), 247.367–030 (Charge–Account Identification Clerk) (4th

ed. rev. 1991). The ALJ stated that "the farmer position was last performed in 1987." Tr. 685. The Commissioner "do[es] not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled ... applies." 20 C.F.R. § 404.1565(a). Vander Molen correctly observes, and the Commissioner concedes, the fifteen-year period expired in 2002, and any skills Vander Molen learned as a farmer should not have been included in determining Vander Molen's prior work experience.[5] *Id.*

█ Vander Molen has no transferable work skills, and his RFC limits him to sedentary work. Vander Molen's age during the closed disability period classified him as an individual "approaching advanced age," which is defined as being aged between 50 and 54. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 201.00(g). Because Vander Molen is approaching advanced age, does not have job skills that provide for direct entry into skilled work, and has no transferable vocational skills, the Medical–Vocational Guidelines direct the Court to conclude Vander Molen is disabled under the Act.[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1.

## V. CONCLUSION

For the reasons stated, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole, and the decision of the ALJ must be **reversed**. The Court finds the evidence in the record supports a finding that Vander Molen was disabled dur-

ing the closed period of September 26, 2000, through December 31, 2003. This case is hereby **remanded** for the sole purpose of computing and awarding Vander Molen the benefits to which he is entitled.

**IT IS SO ORDERED.**

---

5. The Commissioner requests remand to determine whether Vander Molen had actually performed farming activities after 1987. However, the Court declines to disturb the ALJ's finding that Vander Molen last conducted farming activities in 1987.

6. Vander Molen admits he began performing substantial gainful activity in April 2003. Vander Molen is entitled to a nine-month trial

work period. 20 C.F.R. § 404.1592(a). "[A]fter the trial work period has ended we will consider the work you did during the trial work period in determining whether your disability ended at any time after the trial work period." *Id.* Since the Court concludes Vander Molen was disabled under the Act, he is entitled to the nine-month trial work period between April 1, 2003, and December 31, 2003.